| Fill in this information to identify your case: |
|---|
| United States Bankruptcy Court for the: SOUTHERN DISTRICT OF TEXAS |
| Case number *(if known)* _____   Chapter **11** |
| ☐ Check if this an amended filing |

Official Form 201
## Voluntary Petition for Non-Individuals Filing for Bankruptcy    4/16

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.

| 1. | Debtor's name | **EXPRO RESOURCES LIMITED** |
|---|---|---|
| 2. | All other names debtor used in the last 8 years<br>Include any assumed names, trade names and *doing business as* names | **EXPRO METERS LIMITED** |
| 3. | Debtor's federal Employer Identification Number (EIN) | 98-0594472 |
| 4. | Debtor's address | **Principal place of business**<br>THIRD FLOOR, 14-16 CROSS STREET<br>READING BERKSHIRE RG1 1SN<br>UNITED KINGDOM<br>Number, Street, City, State & ZIP Code<br><br>County | **Mailing address, if different from principal place of business**<br><br>P.O. Box, Number, Street, City, State & ZIP Code<br><br>**Location of principal assets, if different from principal place of business**<br><br>Number, Street, City, State & ZIP Code |
| 5. | Debtor's website (URL) | https://www.exprogroup.com/ |
| 6. | Type of debtor | ■ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))<br>☐ Partnership (excluding LLP)<br>☐ Other. Specify: _____ |

Debtor  **EXPRO RESOURCES LIMITED**                              Case number (*if known*)  _____
     Name

**7. Describe debtor's business**   A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))
☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))
☐ Railroad (as defined in 11 U.S.C. § 101(44))
☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))
☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))
☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))
■ None of the above

B. *Check all that apply*

☐ Tax-exempt entity (as described in 26 U.S.C. §501)
☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. §80a-3)
☐ Investment advisor (as defined in 15 U.S.C. §80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes.

   __2131__

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**   *Check one:*

☐ Chapter 7
☐ Chapter 9
■ Chapter 11. *Check all that apply*:

   ☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,566,050 (amount subject to adjustment on 4/01/19 and every 3 years after that).

   ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

   ■ A plan is being filed with this petition.

   ■ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

   ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

   ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

■ No.
☐ Yes.

If more than 2 cases, attach a separate list.

| | District | When | Case number |
|---|---|---|---|
| | District | When | Case number |

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

☐ No
■ Yes.

List all cases. If more than 1, attach a separate list

| | Debtor | **SEE SCHEDULE 1** | Relationship | |
|---|---|---|---|---|
| | District | **Southern District of Texas** | When | Case number, if known |

Official Form 201      **Voluntary Petition for Non-Individuals Filing for Bankruptcy**      page 2

Debtor    **EXPRO RESOURCES LIMITED**                                   Case number (*if known*)
              Name

11. **Why is the case filed in *this district?*** Check all that apply:

    ☐ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

    ■ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

12. **Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

    ■ No

    ☐ Yes.  Answer below for each property that needs immediate attention. Attach additional sheets if needed.

    **Why does the property need immediate attention?** (*Check all that apply.*)

    ☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.
      What is the hazard? _____

    ☐ It needs to be physically secured or protected from the weather.

    ☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

    ☐ Other

    **Where is the property?** _____
                                Number, Street, City, State & ZIP Code

    **Is the property insured?**

    ☐ No

    ☐ Yes.   Insurance agency _____
             Contact name _____
             Phone _____

---

### Statistical and administrative information

13. **Debtor's estimation of available funds** .  *Check one:*

    ■ Funds will be available for distribution to unsecured creditors.

    ☐ After any administrative expenses are paid, no funds will be available to unsecured creditors.

14. **Estimated number of creditors**

    | ■ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
    | ☐ 50-99 | ☐ 5001-10,000 | ☐ 50,001-100,000 |
    | ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than100,000 |
    | ☐ 200-999 | | |

15. **Estimated Assets**

    | ☐ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
    | ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
    | ☐ $100,001 - $500,000 | ■ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
    | ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

16. **Estimated liabilities**

    | ☐ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
    | ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50 million | ■ $1,000,000,001 - $10 billion |
    | ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
    | ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

Debtor    **EXPRO RESOURCES LIMITED**                                    Case number (*if known*) _____
          Name

▪ **Request for Relief, Declaration, and Signatures**

**WARNING** -- Bankruptcy fraud is a serious crime  Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both  18 U S C  §§ 152, 1341, 1519, and 3571

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition

I have been authorized to file this petition on behalf of the debtor

I have examined the information in this petition and have a reasonable belief that the information is trued and correct

I declare under penalty of perjury that the foregoing is true and correct

Executed on _____
              MM / DD / YYYY

X _/s/ John McAlister_____        **John McAlister**
Signature of authorized representative of debtor    Printed name

Title  **General Counsel**

**18. Signature of attorney**

X  */s/ Patricia B. Tomasco*                      Date _____
Signature of attorney for debtor                        MM / DD / YYYY

**Patricia B. Tomasco**
Printed name

**Jackson Walker L.L.P.**
Firm name

**1401 McKinney Street
Suite 1900
Houston, TX 77010**
Number, Street, City, State & ZIP Code

Contact phone  **(512) 236-2076**       Email address  **ptomasco@jw.com**

**01797600**
Bar number and State

Official Form 201    Voluntary Petition for Non-Individuals Filing for Bankruptcy    page 4

## SCHEDULE 1 TO VOLUNTARY PETITION

## AFFILIATED ENTITIES

On the date hereof, each of the affiliated entities listed below (including the debtor in this chapter 11 case) filed in this Court a petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* Contemporaneously with the filings of these petitions, such entities filed a motion requesting joint administration of their chapter 11 cases.

- Expro Group Australia Pty Limited
- Expro Holdings Australia 1 Pty Limited
- Expro Holdings Australia 2 Pty Limited
- Expro Do Brasil Servicos Ltda
- Expro (B) Sendirian Berhad
- Expro Group Canada Inc.
- Expro Gulf Limited
- Exploration and Production Services (Holdings) Limited
- Expro Benelux Limited
- Expro Eurasia Limited
- Expro Holdings UK 2 Limited
- Expro Holdings UK 3 Limited
- Expro Holdings UK 4 Limited
- Expro International Group Holdings Ltd.
- Expro International Group Limited
- Expro North Sea Limited
- Expro Overseas Limited
- Expro Resources Limited
- PT Expro Indonesia
- Expro International Limited
- Expro Finservices Sarl
- Expro Servicios S. de R.L. de C.V.
- Expro Tool S. de R.L. de C.V.
- Exprotech Nigeria Limited
- Expro Holdings Norway As
- Expro Norway AS
- Petrotech AS
- Expro Overseas, Inc
- Expro International B.V.
- Expro Worldwide B.V.
- Petrotech B.V.
- Expro Trinidad Limited
- Expro Americas, LLC
- Expro Holdings US Inc.
- Expro Meters, Inc.
- Expro US Finco LLC
- Expro US Holdings, LLC

Privileged and Confidential

Company Number: **06557795**

Expro Resources Limited, a company incorporated in the United Kingdom (the "Company")

Minutes of a meeting of the board of directors of the Company (the "Board") held by telephone on ___15___ December 2017 at 1:30 am/pm (GMT).

**PRESENT:**  John McAlister        General Counsel (Chairman)
Michael Bentham      Director
(the "<u>Directors</u>")

**IN ATTENDANCE:**

1. **NOTICE AND QUORUM**

   The Chairman reported that due notice of the meeting had been given to all those entitled to receive it and, a quorum being present in accordance with the articles of association of the Company (the "Articles"), declared the meeting open.

2. **DECLARATION OF INTEREST**

   It was noted that in accordance with section 177 of the Companies Act 2006 (the "Act") and the Articles, each of the Directors had formally disclosed to the Company his or her interests in the matters to be considered at the meeting. Each of the Directors had confirmed that he or she had no material interests in the matters under consideration which would prevent him or her from voting or counting towards the quorum whether by law, the Articles, or otherwise. In particular, John McAlister and Michael Bentham declared their indirect minority shareholder interests in the Company, and that they are both party to employment/service contracts with the Expro group.

3. **MEETING AND RESTRUCTURING UPDATE**

   3.1  The Board noted that it had reviewed and considered in advance of the meeting the financial and operational condition of the Company and the group of companies of which the Company is part (the "Group") including:

   3.1.1  the historical performance of the Group and the Company;

   3.1.2  the assets of the Group and the Company;

   3.1.3  the current and long-term liabilities of the Group and the Company; and

   3.1.4  the condition of the oil and gas industry and credit market.

   3.2  It was noted that the Company is a guarantor under the credit agreement dated as of 2 September 2014, as amended, restated, amended and restated or

        otherwise modified or supplemented from time to time, and in effect immediately prior to December ___, 2017 (the "Petition Date"), between, among others, Expro Holdings UK 3 Limited, as parent (the "Parent"), the lenders from time to time party thereto, HSBC Bank USA, N.A., as administrative agent, and HSBC Corporate Trustee Company (UK) Limited, as collateral agent (the "Credit Agreement");

3.3    The Board noted that, in connection with the financial condition of the Company described above, it had received, reviewed and considered in advance of this meeting the recommendations of, and the materials circulated and presented by, the senior management of the Group and the Group's legal, financial, and other advisors. These materials included the relative risks and benefits of pursuing a case under the provisions of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

3.4    The Board also noted that it had reviewed and considered the Company's need for financing in connection with a chapter 11 case under the Bankruptcy Code, and has determined that it is in the best interests of the Company, its creditors, employees, shareholders and other interested parties, for the Company and certain of its subsidiaries and affiliates to enter into the DIP Credit Agreement (as defined below) and one or more related agreements and amendments thereto with the financial institutions from time to time party thereto, pursuant to which the Company will obtain postpetition debtor-in-possession financing to fund their chapter 11 cases and grant the first priority priming liens required thereby.

4.    **RESOLUTIONS**

    4.1    In light of the circumstances as outlined above and legal advice from Freshfields Bruckhaus Deringer LLP and Paul, Weiss, Rifkind, Wharton & Garrison LLP the Board resolved:

        **Chapter 11 filing**

        4.1.1    that the Company should file a voluntary petition for relief (the "Petition") and commence a case (the "Chapter 11 Case") under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"), it being, in the Board's judgment, desirable and in the best interests of the Company, its creditors as a whole, its members and other parties in interest to do so;

        4.1.2    to authorize, direct and empower any director or officer of the Company and any individual listed in Appendix 1 (each an "Authorized Signatory"), acting either collectively or individually, on behalf of and in the name of the Company (i) to execute and verify the Petition as well as all other ancillary documents (including, but not limited to the 'declaration of electronic filing'), and to cause the Petition to be filed with the Bankruptcy Court, and to make or cause to be made prior to the execution thereof any modifications to the Petition or ancillary documents, and (ii) to execute, verify and file or cause to be filed all of the petitions, schedules, lists, motions, applications and other papers or documents necessary or desirable in connection with the foregoing;

        **Power of Attorney for Authorised Signatories**

4.1.3   to appoint, for the purposes of the resolutions passed at this meeting, the individuals listed at Appendix 1 to the position of Authorized Signatory, such appointment to be effected by way of a power of attorney (the "Power of Attorney", the form of which is included at Appendix 2);

4.1.4   to authorise each of the Directors, together and each of them individually, to take any and all steps necessary to execute and give full legal effect to, the Power of Attorney;

**Retention of Professionals**

4.1.5   to authorize and direct the Authorized Signatories, together and each of them individually, to employ any individual and/or firm, as counsel, professionals, consultants, or financial advisors to the Company as are deemed necessary to represent and assist the Company in carrying out its duties under the Bankruptcy Code, and in connection therewith, to execute appropriate retention agreements, pay appropriate retainers prior to the filing of the Petition, and to cause to be filed appropriate applications for authority to retain the services of such firms;

**Debtor-in-Possession Financing, Cash Collateral, and Adequate Protection**

4.1.6   to authorize, adopt and approve the form, terms, and provisions of a proposed interim order (the "Interim DIP Order") to which the Company is or will be subject, and the actions and transactions contemplated thereby, including, without limitation, the execution, delivery and performance of that certain Senior Secured Super Priority Debtor In Possession Credit Agreement (the "DIP Credit Agreement"), by and between Expro Holdings UK 3 Limited, as parent, the various entities with the Group, as borrower, the guarantors from time to time party thereto, the lenders from time to time party thereto, and HSBC Bank USA, N.A., (or such other agent as may be appointed) as administrative agent and collateral agent (the "DIP Agent"), and to authorise, adopt and approve the borrowing of funds thereunder, and to take such actions and negotiate or cause to be prepared and negotiated and to execute, deliver, perform, and cause the performance of, the Interim DIP Order, the DIP Credit Agreement and such other agreements, certificates, instruments, guaranties, receipts, petitions, motions, letters or other papers or documents to which the Company is or will be a party, including, but not limited to any security and/or security assignment agreement over all or any of the assets of the Company, or any pledge agreement or guarantee agreement and any ancillary or perfection documents to such security, security assignment, pledge agreement or guarantee agreement (collectively with the Interim DIP Order and the DIP Credit Agreement, the "DIP Documents"), and incur and pay or cause to be paid all fees and expenses payable in connection with the DIP Documents, in each case, in the form or substantially in the form thereof submitted to the Parent, with such changes, additions, and modifications thereto as the officers of the Company executing the same shall approve, such approval to be conclusively evidenced by such officers' execution and delivery thereof;

    4.1.7    that the Company will obtain benefits from the use of collateral, including cash collateral, as that term is defined in section 363(a) of the Bankruptcy Code (the "Cash Collateral"), which is security for certain prepetition secured lenders (collectively, the "Secured Lenders") party to the Credit Agreement;

    4.1.8    to authorise the Company, as debtor and debtor in possession under the Bankruptcy Code, to provide certain adequate protection for the Secured Lenders in connection with the DIP Documents and use of cash collateral and to undertake any and all related transactions on substantially the same terms as contemplated under the DIP Documents;

    4.1.9    to authorize, direct and empower the Authorized Signatories, and each Authorized Signatory acting alone, in the name of, and on behalf of the Company (i) to grant to the DIP Agent a security interest in and liens upon, substantially all of the Company's assets, whether now owned or hereafter acquired (ii) to take any action required under any laws to perfect the security interests of the DIP Agent under the Interim DIP Order and the other DIP Documents, including filing or authorizing the DIP Agent to file any Uniform Commercial Code (the "UCC") financing statements, foreign security agreements and pledge agreements, any other equivalent filings, any intellectual property filings and recordation and any necessary assignments for security or other documents in the name of the Company that the DIP Agent deems necessary or appropriate, including any such UCC financing statement containing a generic description of collateral, such as "all assets," "all property now or hereafter acquired" and other similar descriptions of like import, (iii) to execute and deliver, and to record or authorize the recording of, such mortgages and deeds of trust in respect of real property of the Company and such other filings in respect of intellectual and other property of the Company, in each case as the DIP Agent may reasonably request to perfect the security interests of the DIP Agent under the Interim DIP Order and the other DIP Documents, and (iv) to execute and deliver such guaranties in favour of the DIP Agent as may be required by the terms of the DIP Credit Agreement;

5. **General**

    5.1.1    to authorize, direct and empower each of the Authorized Signatories, acting in the name of, and on behalf of the Company from time to time (a) to take such further actions and execute and deliver such certificates, instruments, guaranties, notices and documents as may be required or as such officer may deem necessary, advisable or proper to carry out the intent and purpose of the foregoing resolutions, including the execution and delivery of any security agreements, pledges, financing statements and the like, (b) to perform the obligations of the Company under the Bankruptcy Code, with all such actions to be performed in such manner, and all such certificates, instruments, guaranties, notices and documents to be executed and delivered in such form, as the officer performing or executing the same shall approve, and the performance or execution thereof by such officer shall be conclusive evidence of the approval thereof by such officer and by the Company and (c) to pay fees and expenses in

connection with the transactions contemplated by the foregoing resolutions.

5.2 The Board further resolved to:

5.2.1 ratify, approve, confirm and adopt as the acts and deeds of the Company in all respects all actions heretofore done by any Director or any officer of the Company acting at their direction, or by any employees or agents of the Company, on behalf of the Company, on or prior to the date hereof in connection with the transactions contemplated or implied by the foregoing resolutions, including but not limited to entry into the restructuring support agreement dated 7 December 2017 between the Company, certain of its affiliates and certain consenting creditors and all actions by any director or any officer of the Company acting at their direction, or by any employees or agents of the Company, on behalf of the Company, on or prior to the date hereof in connection with the transactions contemplated or implied by the foregoing resolutions;

5.2.2 authorise each of the Directors to certify and deliver, to any person to whom such certification and delivery may be deemed necessary and appropriate in their opinion, a true copy of the foregoing resolutions; and

5.2.3 direct the Company Secretary to file an executed copy of the minutes in Companies' Register and to authorize them to certify and deliver, to any person to whom such certification and delivery may be deemed necessary or appropriate in the opinion of any officer, as the case may be, a true copy of the foregoing resolutions.

6. **A.O.B**

The Board noted there was no further business.

7. **CLOSE**

There being no further business, the Chairman declared the meeting closed at am/pm (GMT).

...........................

Chairman

# APPENDIX 1

## LIST OF AUTHORISED SIGNATORIES

Michael Bentham

Alistair Geddes

Michael Jardon

John McAlister

Eric Nelson

Domenico Sansalone

# APPENDIX 2

# FORM OF POWER OF ATTORNEY

This **POWER OF ATTORNEY** is made as a Deed on 15 December 2017 by Expro Resources Limited whose registered office is Third Floor 14-16 Cross Street, Reading RG1 1SN (the *Principal*).

1.  **Appointment and powers**

    The Principal hereby appoints:

    Michael Bentham (*British, born on 22 May 1962, with passport number 527050664 and address 738 HWY 6 SOUTH, SUITE 1000, HOUSTON TX 77079, USA*);

    Alistair Geddes, (*British, born on 18 April 1962, with passport number 537813974 and address THIRD FLOOR, 14-16 CROSS STREET, READING, BERKSHIRE RG1 1SN, UK*);

    Michael Jardon, (*American, born on 3 November 1969, with passport number 529518492 and address 738 HWY 6 SOUTH, SUITE 1000, HOUSTON TX 77079, USA*);

    John McAlister, (*British, born 21 May 1966, with passport number 523018347 and address THIRD FLOOR, 14-16 CROSS STREET, READING, BERKSHIRE RG1 1SN, UK*);

    Eric Nelson, (*American, born 3 January 1966 with passport number 454620912 and address 738 HWY 6 SOUTH, SUITE 1000, HOUSTON TX 77079, USA*); and

    Domenico Sansalone, (*Canadian, born on 6 February 1979, with passport number GA197792 and address THIRD FLOOR, 14-16 CROSS STREET, READING, BERKSHIRE RG1 1SN, UK*)

    as its attorneys (*Attorneys*) and in the Principal's name or otherwise and on its behalf:

    (a)   to execute and verify a voluntary petition for relief (the "Petition") and commence a case (the "Chapter 11 Case") under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"), and to execute and verify all other ancillary documents (including but not limited to the 'declaration of electronic filing'), and to cause the Petition to be filed with the Bankruptcy Court, and to make or cause to be made prior to the execution thereof any modifications to the Petition or ancillary documents, and to execute, verify and file or cause to be filed all of the petitions, schedules, lists, motions, applications and other papers or documents necessary or desirable in connection with the foregoing;

    (b)   to employ any individual and/or firm as counsel, professionals, consultants, or financial advisors to the Principal as are deemed necessary to represent and assist the Principal in carrying out its duties under the Bankruptcy Code, and in connection therewith, the Attorneys are hereby authorized and directed to execute appropriate retention

agreements, pay appropriate retainers prior to the filing of the Petition, and to cause to be filed appropriate applications for authority to retain the services of such individuals and/or firms;

(c) to adopt and approve the form, terms and provisions of a proposed interim order (the "Interim DIP Order") to which the Principal is or will be subject, and the actions and transactions contemplated thereby, including, without limitation, the execution, delivery and performance of that certain Senior Secured Super Priority Debtor in Possession Credit Agreement (the "DIP Credit Agreement"), by and between Expro Holdings UK 3 Limited, as parent (the "Parent"), the various entities within the Expro group as borrower, the guarantors from time to time party thereto, the lenders from time to time party thereto, and HSBC Bank USA, N.A., (or such other agent as may be appointed) as administrative agent and collateral agent (the "DIP Agent") and to authorize, adopt and approve the borrowing of funds thereunder, and to take such actions and negotiate or cause to be prepared and negotiated and to execute, deliver, perform, and cause the performance of, the Interim DIP Order, the DIP Credit Agreement and such other agreements, certificates, instruments, guaranties, receipts, petitions, motions, letters or other papers or documents to which the Company is or will be a party, including, but not limited to any security and/or security assignment agreement over all or any of the assets of the Company, or any pledge agreement or guarantee agreement and any ancillary or perfection documents to such security, security assignment, pledge agreement or guarantee agreement (collectively with the Interim DIP Order and the DIP Credit Agreement, the "DIP Documents"), and incur and pay or cause to be paid all fees and expenses payable in connection with the DIP Documents, in each case, in the form or substantially in the form thereof submitted to the Parent, with such changes, additions, and modifications thereto as the officers of the Principal executing the same shall approve, such approval to be conclusively evidenced by such officers' execution and delivery thereof;

(d) to grant to the DIP Agent a security interest in, and liens upon, substantially all of the Principal's assets, whether now owned or hereafter acquired;

(e) to take any action required under any laws to perfect the security interests of the DIP Agent under the Interim DIP Order and the other DIP Documents, including filing or authorizing the DIP Agent to file any Uniform Commercial Code (the "UCC") financing statements, foreign security agreements and pledge agreements, any other equivalent filings, any intellectual property filings and recordation and any necessary assignments for security or other documents in the name of the Principal that the DIP Agent deems necessary or appropriate, including any such UCC financing statement containing a generic description of collateral, such as "all assets," "all property now or hereafter acquired" and other similar descriptions of like import;

(f) to execute and deliver, and to record or authorize the recording of, such mortgages and deeds of trust in respect of real property of the Principal and such other filings in respect of intellectual and other property of the Principal, in each case as the DIP Agent may reasonably request to perfect the security interests of the DIP Agent under the Interim DIP Order and the other DIP Documents;

(g) to execute and deliver such guaranties in favour of the DIP Agent as may be required by the terms of the DIP Credit Agreement;

(h) from time to time:

   (i) to take such further actions and execute and deliver such certificates, instruments, guaranties, notices and documents as may be required or they may deem necessary, advisable or proper to carry out the intent and purpose of the resolutions of the board meeting of 15 December 2017, including the execution and delivery of any security agreements, pledges, financing statements and the like;

   (ii) to perform the obligations of the Principal funder the Bankruptcy Code, with all such actions to be performed in such manner, and all such certificates, instruments, guaranties, notices and documents to be executed and delivered in such form, as the Attorney performing or executing the same shall approve, and the performance or execution thereof by such Attorney shall be conclusive evidence of the approval thereof by such Attorney and by the Company; and

   (iii) to pay fees and expenses in connection with the transactions contemplated by the foregoing clauses.

2. **Authority of joint attorneys**

   All actions authorised by this Power of Attorney may be taken by any one or more of the Attorneys. Any and all acts done, decisions made and instruments or other documents executed pursuant to this Power of Attorney by any one or more of the Attorneys shall therefore be as valid and effectual as though done by both of the Attorneys and binding on the Principal and its successors.

3. **Termination and Revocability**

   This Power of Attorney shall terminate on the date which is three years after the date of this Power of Attorney.

4. **Ratification**

   All acts done and documents executed by an Attorney in good faith in purported exercise of any power conferred by this Power of Attorney shall for all purposes be valid and binding on the Principal and its successors and the Principal undertakes and agrees to ratify all such acts done and documents executed and signed, including all actions by any director or any officer of the

Principal, on behalf of the Principal, on or prior to the date hereof in connection with the transactions contemplated in this Power of Attorney.

5. **Validity**

    The Principal declares that a person who deals with either Attorney in good faith may accept a written statement signed by that Attorney to the effect that this Power of Attorney has not been revoked as conclusive evidence of that fact.

6. **Governing law and jurisdiction**

    This Power of Attorney and any non-contractual obligations arising out of or in connection with it shall be governed by, and interpreted in accordance with, English law.

    The English courts shall have exclusive jurisdiction in relation to all disputes (including claims for set-off and counterclaim) arising out of or in connection with: (i) the creation, validity, effect, interpretation, performance or non-performance of, or the legal relationships established by, this Power of Attorney; and (ii) any non-contractual obligations arising out of or in connection with this Power of Attorney. For such purposes each party irrevocably submits to the jurisdiction of the English courts and waives any objection to the exercise of that jurisdiction.

**IN WITNESS WHEREOF** this Power of Attorney has been duly executed as a **DEED** on the date stated at the beginning of it:

| | |
|---|---|
| **EXECUTED** and **DELIVERED** as a **DEED** by the Principal acting by a director in the presence of: *witness* | ) ) ) ) ) |

_____
Director

Signature of witness  *Kellie Cairns*

Name: Kellie Cairns

Address: 1285 Avenue of the Americas, New York, NY 10019

Occupation: Lawyer